1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10                    ----oo0oo----

11

12  LAURA J. CHADWICK,
                                NO. CIV. 06-2245 FCD EFB
13          Plaintiff,

14      v.                      MEMORANDUM AND ORDER

15  METROPOLITAN LIFE INSURANCE
    COMPANY, aka MetLife, DOE
16  INSURANCE AGENT and DOES 2 to
    100,
17
            Defendants.
18
                      ----oo0oo----
19

20      This matter is before the court on defendant Metropolitan

21  Life Insurance Company, aka MetLife's ("defendant") motion for

22  summary judgment as to plaintiff Laura J. Chadwick's

23  ("plaintiff") complaint raising claims under the Employee

24  Retirement Income Security Act ("ERISA").  (See Notice of

25  Removal, filed Oct. 12, 2006 [Docket #2].)  Plaintiff seeks long-

26  term disability ("LTD") benefits under the EdFund Employee

27  ///

28  ///

1   Welfare Plan ("Plan").[1]

2       For the reasons set forth below, the court finds that the

3   proper standard of review of this matter is abuse of discretion,

4   as opposed to de novo, and thereunder, the court cannot find that

5   defendant acted arbitrarily or capriciously in denying

6   plaintiff's LTD benefits claim.  As such, the court GRANTS

7   defendant's motion for summary judgment.

                              **BACKGROUND**[2]

9       **A.    Terms of the Plan**

10      Edfund, plaintiff's employer, adopted the Plan[3] to provide

11  its employees with income in the event of certain disabilities.

12  Plaintiff was a financial aid analyst at Edfund until April 2,

13  2004, when she alleged she was disabled from working due to

14  fibromyalgia--a syndrome consisting of aching pain and stiffness

15

16  _____

17      [1]   Because oral argument will not be of material
    assistance, the court orders this matter submitted on the briefs.
18  E.D. Cal. L.R. 78-230(h).

19      [2]   The following statement of the facts is primarily drawn
    from defendant's motion for summary judgment (Docket #16), as the
20  facts stated therein derive from the underlying administrative
    record and Plan documents.  In her opposition, plaintiff attempts
21  to dispute certain facts as described in defendant's motion.
    However, the court finds that there are no *material* facts in
22  dispute.  (See Def.'s Reply to Pl.'s Statement of Disputed Facts,
    filed June 22, 2007 [Docket #33].)  Also, as the court discusses
23  below, it does not consider the Social Security Administration's
    ("SSA") record filed by plaintiff in support of her opposition.
24  See infra Analysis, Part A.

25      [3]   The Plan is attached as Exhibit 1 to Defendant's Notice
    of Filing of Administrative Record [Docket #17].  The Plan bears
26  the production number range of ADMIN 0001-0041.  All further
    references to the Plan will be to the applicable production
27  number.  The remainder of the administrative record bears the
    production number range of ADMIN 0042-0129.  All further
28  references to the administrative record documents will be to the
    applicable production number.

in one or numerous parts of the body.  (ADMIN 0117.)  Plaintiff
sought LTD benefits under the Plan.

Defendant both funds and acts as the claims administrator
for the Plan.  (Def. Mem. of P. & A., filed May 25, 2007
["Mot'n"], at 1 [Docket #16].)  For defendant to approve a claim
for LTD benefits, a plan participant must become and remain
disabled, as that term is defined in the Plan, while covered
under the Plan.  (Mot'n at 2.)  The Plan defines "disabled" in
pertinent part as follows:

> "Disability" or "Disabled" means that, due
> to an Injury or Sickness, you require the
> regular care and attendance of a Doctor and:
>
> (1) you are unable to perform each of the
> material duties of your regular job; and
>
> (2) after the first 24 months of benefit
> payments, you must also be unable to
> perform each of the material duties of any
> gainful work or service for which you are
> reasonably qualified taking into
> consideration your training, education,
> experience and past earnings; or
>
> (3) you, while unable to perform all of the
> material duties of your regular job on a
> full-time basis, are: (a) performing at
> least one of the material duties of your
> regular job or of any other gainful work
> or service on a part-time or full-time
> basis; and (b) earning currently at least
> 20% less per month than your Indexed Basic
> Monthly Earnings due to that same Injury
> or Sickness

(ADMIN 0029.)  To be eligible for benefits under the Plan,
participants must first demonstrate 180 days of disability, known
as the "Elimination Period."  (Id. at 0005, 0029.)  After
completing the Elimination Period, participants will receive
monthly LTD benefits if they remain disabled, as defined in the
Plan.  (Id. at 0031.)

3

**B.   Defendant's Discretion Under the Terms of the Plan**

Defendant has full discretion to interpret the terms of the Plan and to determine the eligibility of plan participants.  (Id. at 0041.)  Specifically, the Plan states:

> In carrying out their respective responsibilities under the Plan, the Plan administrators and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.  Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(Id.)  When filing a claim, the claimant must provide satisfactory proof to defendant describing the nature and extent of the injury or sickness.  (Id. at 0034.)

**C.   Defendant's Denial of Plaintiff's Claim for LTD Benefits**

Plaintiff began work with Edfund as a financial aid analyst on October 27, 1997.  (Pl.'s Opp'n, filed June 8, 2007 ["Opp'n"], at 4 [Docket #19].)  Plaintiff's position was fully sedentary in nature and required repetitive use of hands, fine finger dexterity for three to four hours per day, and the ability to occasionally lift or carry up to ten pounds.  (ADMIN 0118.)  Plaintiff ceased working for Edfund on April 2, 2004 and sought disability benefits based primarily on a diagnosis of fibromyalgia.  (Id. at 0117.)

Defendant received plaintiff's initial claim for LTD benefits on June 17, 2004.  (Id. at 0042.)  Plaintiff submitted several documents, including two Attending Physician Statements

4

1   ("APS") from her treating physician, Dr. Robin L. Wong. (Id. at
2   126-29.) On the first APS, Dr. Wong diagnosed plaintiff with
3   fibromyalgia and stated that plaintiff could operate a motor
4   vehicle, perform fine finger movements with both hands, and
5   occasionally lift up to twenty pounds. (Id. at 126-27.) Dr.
6   Wong did not recommend plaintiff cease work; instead, she advised
7   plaintiff to continue her regular occupation part-time for
8   twenty-five hours per week. (Id.) However, on the second APS,
9   dated the same as the first, April 8, 2004, Dr. Wong changed her
10  ultimate opinion and recommended that plaintiff cease work due to
11  "too much discomfort." (Id. at 0129.) While Dr. Wong changed
12  her conclusion, her assessment of plaintiff's health remained
13  unchanged. (Id. at 0126-29.)

14      On June 29, 2004, defendant sent a letter to plaintiff
15  requesting additional information. (Id. at 0115-16.) Defendant
16  requested plaintiff send, by July 29, 2004, among other
17  information, "all medical records from current treating
18  physicians" and "copies of your medical records from *April 2004-
19  present*." (Id.) (emphasis in original). On July 27, 2004,
20  defendant sent another letter to plaintiff notifying her that it
21  had not received the requested information, and therefore, her
22  file would be closed. (Id. at 0103.) Two months later, on
23  September 22, 2004, plaintiff contacted defendant regarding her
24  claim. (Id. at 0044.) Defendant informed plaintiff that her
25  claim had been deemed abandoned because of her failure to supply
26  the required information. (Id.) Plaintiff later sent defendant
27  one page of medical notes regarding an August 13, 2004 visit with
28  Dr. Wong. (Id. at 0101-02.) On January 3, 2005, defendant

called plaintiff and informed her that no medical information had been received other than the medical notes of the one office visit and the APS. (Id. at 0045.)  Plaintiff responded that she could not send any more records because she had not seen her attending physician since August and had not followed up with anyone regarding her diagnosis. (Id.)  Defendant informed plaintiff that her claim would be reviewed on the available records. (Id.)

On January 19, 2005, defendant called Dr. Wong to obtain plaintiff's medical records but was told that such requests must be made in writing. (Id. at 0046.)  The same day, defendant mailed a letter to Dr. Wong restating its request. (Id. at 0099.)  Specifically, defendant requested readable medical documentation to support plaintiff's inability to perform her sedentary job from March 1, 2004 to the present. (Id.)  On February 1, 2005, in response to defendant's request, Dr. Wong sent four pages of handwritten office visit notes, which included the one page of notes dated August 13, 2004, previously sent to defendant. (Id. at 0095-98.)

Matthew M. Dubai, a nurse consultant and clinical specialist, reviewed plaintiff's claim based on the documentation defendant had received. (Id. at 0047.)  In the written report, Dubai remarked that most of Dr. Wong's notes were unreadable, but he could decipher that plaintiff had a fall, was diagnosed with fibromyalgia, and had chronic lower back pain; however, he concluded that the "extent this effect[ed] her functional ability is not known." (Id.)  Dubai described that the medical records did not demonstrate plaintiff's conditions affected her

6

functional ability as there were no physical exams indicating any
functional loss, no indication that tender points were tested for
a diagnosis of fibromyalgia, no tests to rule out other causes
for her pain, and no radiological studies indicating the
pathology of her lower back pain.  (_Id._)  Dubai concluded that
the information provided did not demonstrate a functional
impairment that would preclude plaintiff from performing her
occupation full-time.  (_Id._)  On February 7, 2005, defendant sent
plaintiff a letter denying her claim for LTD benefits.  (_Id._ at
0091-92.)  Therein, defendant advised plaintiff of her right to
appeal the determination and the procedures for submitting an
appeal.  (_Id._)

      On April 8, 2005, defendant received four additional pages
of medical records from Dr. Wong: a MRI report dated February 19,
2004, and three pages of lab results dated January 16, 2004.
(_Id._ at 0086-90.)  On April 18, 2005, defendant informed
plaintiff that it received additional information, and if she
wanted to appeal the denial of her claim she had to follow the
review procedures explained in the February 7, 2005 denial
letter.  (_Id._ at 0085.)  In response, on April 28, 2005,
plaintiff sent a letter stating she was appealing the denial of
her claim.  (_Id._ at 0082.)

      Defendant then submitted plaintiff's medical records for
review by Dr. Tanya C. Lumpkins.  Dr. Lumpkins is a Board-
certified Rheumatologist, a medical doctor specialized in the
non-surgical treatment of rheumatic illness, who attested that
her review of plaintiff's file did not constitute a conflict of
interest.  (_Id._ at 0077.)  Dr. Lumpkins' report noted that

7

1  plaintiff's MRI test was negative and her lab tests were

2  unremarkable.  (Id. at 0076.)  In her conclusion, Dr. Lumpkins

3  stated that "there is insufficient data to support an impairment

4  of sufficient severity to prevent the claimant from performing

5  the duties of [her] sedentary job full time."  (Id. at 0077.)  On

6  May 16, 2005, defendant denied plaintiff's appeal.  (Id. at 0062-

7  64.)  Defendant explained that it had determined that the medical

8  records submitted by plaintiff did not substantiate a severity of

9  symptoms that would prevent plaintiff from performing the

10  material duties of a financial aid analyst.  (Id.)

11      On August 8, 2006, plaintiff filed the instant suit against

12  defendant in state court seeking damages for the denial of LTD

13  benefits under the Plan.  (Compl., filed Aug. 8, 2006, [Docket

14  #2].)  Defendant removed the action to this court on grounds of

15  ERISA-preemption on October 12, 2006.  (Notice of Removal, filed

16  Oct. 12, 2006.)  Defendant now moves for summary judgment as to

17  plaintiff's claims.  In response to defendant's motion, plaintiff

18  preliminarily moved to continue the motion for summary judgment

19  to allow further discovery; alternatively, plaintiff responded to

20  the merits of defendant's motion.

21                          **ANALYSIS**

22      A.   **Plaintiff's Request for Further Discovery**

23      Plaintiff seeks a continuance of defendant's motion for

24  summary judgment to allow further discovery regarding defendant's

25  inherent structural conflict of interest in both administrating

26  and funding the Plan.  (Opp'n at 13.)  For several reasons,

27  plaintiff's request for further discovery is DENIED:

28  ///

1    First, plaintiff's request is untimely.  Pursuant to the

2 court's Status (Pre-Trial Scheduling) Order, issued December 14,

3 2006, discovery closed March 2, 2007.  Importantly, during the

4 discovery period, plaintiff knew of the issues she now raises in

5 her opposition; her contention that defendant "for the first time

6 in its motion, stated unequivocally the Plan is discretionary" is

7 false.  (Opp'n at 4.)  As stated above, the Plan expressly states

8 that the administrator has full discretion when reviewing a

9 claim.  Defendant produced the Plan as part of its initial

10 disclosures pursuant to Federal Rule of Civil Procedure 26.

11 Also, in the parties' Joint Status Report, filed December 11,

12 2006, defendant stated it "denies that plaintiff is entitled to

13 any relief in this action, and contends that its determination to

14 deny plaintiff's claim was not an abuse of discretion." (Docket

15 #10, 2:6-8.)  Thus, plaintiff was well aware of defendant's

16 position that it had full discretionary authority in reviewing

17 her claim from the outset of the action or, at a minimum, since

18 December 2006.  Yet, plaintiff conducted no discovery regarding

19 defendant's alleged bias during the discovery period and did not

20 request an extension of the deadline.  Indeed, even now she

21 presents no explanation for why she failed to seek the

22 information she claims is necessary to a fair adjudication of

23 this action.[4]

24    Second, plaintiff's arguments in support of extending

25 discovery are not persuasive.  Plaintiff baldly questions the

26
_____

27    [4]    In moving for a continuance of the motion, plaintiff
did not comply with the requirements of Federal Rule of Civil
Procedure 56(f).  For this alternative reason, plaintiff's
28 request for discovery is properly denied.

background, training, experience, and financial relationship of
defendant's independent physician, Dr. Lumpkins.  (Opp'n at 7.)
However, the record establishes that Dr. Lumpkins is a physician
specialized in rheumatology who reasonably concluded, based on
the information at her disposal, that plaintiff was not fully
prevented from working.  Plaintiff presents no reasons or
evidence to find otherwise, and thus, the court cannot find that
the requested discovery would demonstrate the existence of a
conflict beyond the inherent conflict present because defendant
administrates and funds the Plan.

Plaintiff also asserts that since the SSA granted her claim
for benefits, defendant's denial of her claim should be further
investigated.  (Opp'n at 7, 10-11.)  However, precedent and
practicability lend no credence to plaintiff's assertion.  Claims
for SSA benefits are bound by the "treating physician rule,"
where deference is paid to the treating physician's analysis.
<u>Black & Decker v. Nord</u>, 538 U.S. 822, 829 (2003).  Thus, the SSA
had to afford deference to Dr. Wong's conclusory statement that
plaintiff could not work.  However, in ERISA cases, the treating
physician rule does not apply.  <u>Id.</u> at 834 n.4.  Therefore,
defendant was not required to accept Dr. Wong's conclusory
assertion of plaintiff's inability to work at face value and was
entitled to credit other reliable evidence establishing plaintiff
was not unable to work.

Furthermore, a chronological impossibility hinders
plaintiff's assertion that further discovery is needed because
SSA approved plaintiff's claim while defendant did not:  SSA
granted plaintiff's claim in April 2006, almost a year after

10

1  defendant denied plaintiff's appeal.  Thus, defendant could not

2  have considered SSA's ruling in their analysis.  <u>Taft v.</u>

3  <u>Equitable Life Ins. Co.</u>, 9 F.3d 1469 (9th Cir. 1994) (recognizing

4  that a claim administrator cannot be deemed to have abused its

5  discretion based on evidence not before it at the time the

6  decision was made).[5]

7      Finally, plaintiff's reliance on <u>Frost v. MetLife</u>, 414 F.

8  Supp. 2d 961 (C.D. Cal. 2006), is unavailing as that case is

9  readily distinguishable.  In <u>Frost</u>, defendant MetLife, shared the

10 same inherent conflict of interest found in this case of both

11 administrating and funding the disability plan.  <u>Id.</u> at 963.

12 Metlife objected to the subpoenas the plaintiff served on three

13 doctors who reviewed the medical records when the plaintiff first

14 sought discovery on MetLife's conflict of interest.  <u>Id.</u>  MetLife

15 then filed a motion for protective order, "seeking to bar any

16 depositions, written interrogatories or document production by

17 the doctors."  <u>Id.</u>  The court concluded that limited discovery

18 was permissible.  <u>Id.</u> at 965.  The circumstances are widely

19 different in this case: here, there was a nearly three month

20 discovery period when plaintiff could have sought the requested

21 information but did not do so even though defendant did not

22 demonstrate any reluctance to divulge or bar information

23 obtainable from the nurse consultant or Dr. Lumpkins.

24 ///

25 _____

26      [5]   For this reason, the court sustains defendant's
   objection to the admission of the SSA record.  (Def.'s Objs. to
   Pl.'s Notice of Filing SSA Record, filed June 22, 2007 [Docket
27 #35].)  Information not in the administrative record before the
   claims administrator is generally not admissible in an ERISA
28 benefits case.  <u>Id.</u> at 1472.

1    In sum, in this case, the only purported "evidence" of a

2  conflict of interest is the fact of defendant's role as

3  administrator and funder of the Plan.  In such cases, courts have

4  not granted discovery.  See e.g. Shemano-Krupp v. Mut. of Omaha

5  Ins. Co., 2006 U.S. Dist. LEXIS 84352, *29-31 (N.D. Cal. Nov. 20,

6  2006) (denying discovery where there was no evidence of a

7  conflict of interest beyond the "apparent conflict which exists

8  when the insurer both funds and administers the plan"); Baldoni

9  v. Unumprovident, Ill. Tool Works, Inc., 2007 U.S. Dist. LEXIS

10  14127, *15 (D. Or. Feb. 26, 2007) (denying discovery when an

11  insurer both administers and funds the plan unless the plaintiff

12  makes "a threshold showing"); Newman v. Standard Ins. Co., 997 F.

13  Supp. 1276, 1280-81 (C.D. Cal. 1998) (denying discovery when an

14  insurer both administers and funds the plan because of "immense

15  practical problems associated with this position," including

16  expensive litigation which "flies in the face of the purpose of

17  ERISA").

18     **B.   Applicable Standard of Review -- Abuse of
            Discretion[6]**

19

20    Before reaching the merits of defendant's motion, the court

21  must determine whether to apply de novo or abuse of discretion

22

23     [6]   In an ERISA benefits case, the "traditional" summary
    judgment standards are not necessarily appropriate.  Fed. R. Civ.
24  P. 56.  Where, as here, the administrator's decision is reviewed
    for abuse of discretion, "a motion for summary judgment is merely
25  the conduit to bring the legal question before the district court
    and the usual tests of summary judgement, such as whether a
26  genuine dispute of material fact exists, do not apply."  Bendixen
    v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999) (finding
27  that "[a]lthough there may be contradictory evidence in the
    record, we hold that, as a matter of law, the plan administrator
28  did not abuse its discretion").

1  review to defendant's denial of plaintiff's LTD benefits.   The

2  Plan at issue here is governed by ERISA.   In <u>Firestone Tire &</u>

3  <u>Rubber Co. v. Bruch</u>, the United States Supreme Court held that a

4  challenge to the denial of benefits under an ERISA plan is

5  reviewed de novo "unless the benefit plan gives the administrator

6  or fiduciary discretionary authority to determine eligibility for

7  benefits or to construe the terms of the plan."   489 U.S. 101,

8  115 (1989).   When a plan document gives an administrator such

9  discretionary authority, a court must apply the "abuse of

10 discretion" or "arbitrary and capricious" standard of review to

11 its decision to deny benefits.   <u>Id.</u> at 111; <u>see also</u> <u>Abatie v.</u>

12 <u>Alta Health & Life Ins. Co.</u>, 458 F.3d 955, 963 (9th Cir. 2006).

13      In this case, the Plan unambiguously grants defendant

14 discretion when reviewing claims.   The Plan expressly states that

15 "the Plan administrator and other Plan fiduciaries shall have

16 discretionary authority to interpret the terms of the Plan and to

17 determine eligibility for and entitlement to Plan

18 benefits . . . ."   (ADMIN 0041.)   Only where there are procedural

19 violations "so flagrant as to alter the substantive relationship

20 between the employer and employee, thereby causing the

21 beneficiary substantive harm," does the court apply de novo

22 review despite the discretionary grant of authority.   <u>Gatti v.</u>

23 <u>Reliance Standard Life Ins. Co.</u>, 415 F.3d 978, 985 (9th Cir.

24 2005).   As an example of what constitutes "wholesale and flagrant

25 violations of the procedural requirements of ERISA," the Ninth

26 Circuit in <u>Abatie</u> cited the facts in <u>Blau v. Del Monte Corp.</u>, 748

27 F.2d 1348 (9th Cir. 1984), noting that in <u>Blau</u>, "the

28 administrator had kept the policy details secret from the

employees, offered them no claims procedure, and did not provide them in writing the relevant plan information." <u>Abatie</u>, 458 F.3d at 971.

No such failure "to comply with virtually every applicable mandate of ERISA" is at issue here. <u>Id.</u> Defendant notified plaintiff, shortly after she filed her claim, that she must provide additional information, including "all medical records from current treating physicians." (ADMIN 0115-16.) A month later, defendant notified plaintiff that the requested information had not been received. (<u>Id.</u> at 0103.) Defendant also attempted to obtain plaintiff's records by initiating contact with plaintiff's physician, Dr. Wong. (<u>Id.</u> at 0046.) Furthermore, defendant informed plaintiff of her right to an appeal and of the procedures for filing one. (<u>Id.</u> at 0091-92, 0064.) Under these facts, the court concludes that defendant committed no "wholesale and flagrant violations" during the claims process and thus finds that abuse of discretion review is proper.

Nevertheless, plaintiff contends that further discovery could demonstrate a significant bias by defendant. (Opp'n at 8.) Plaintiff cites <u>Atwood v. Newmont Gold Co.</u>, 45 F.3d 1317 (9th Cir. 1995) and its progeny, arguing that this bias would shift the burden to defendant to prove that such a conflict did not exist and if defendant failed to do so, the court would have to review the decision de novo. <u>Id.</u> However, <u>Abatie</u> explicitly overruled <u>Atwood</u> in its entirety; the <u>Atwood</u> burden-shifting analysis is no longer valid. <u>Abatie</u>, 458 F.3d at 966-67. <u>Firestone</u> and <u>Abatie</u> make clear that if a benefit plan explicitly

14

confers discretion on the administrator, then abuse of discretion review applies, unless "wholesale and flagrant" violations exist.

In addition, abuse of discretion review applies even if the administrator has a structural conflict of interest, so long as the Plan unambiguously grants the administrator discretion. Abatie, 458 F.3d at 965.  Thus, the fact that defendant both administrates and funds the Plan is not sufficient, in itself, to invoke de novo review.  However, a conflict of interest should not be ignored.  Firestone requires that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a [structural] conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.' RESTATEMENT (SECOND) OF TRUSTS § 187, cmt. d (1959)." Firestone, 489 U.S. at 115.  Therefore, the court recognizes that the inherent conflict of interest found in this case is a factor to consider when analyzing defendant's denial of Plan benefits; however, the conflict of interest does not alter the standard of review, which, in this case, the court concludes is abuse of discretion.

**C.   Defendant's Denial of Plaintiff's LTD Benefits Claim**

Applying the abuse of discretion standard of review, the sole issue before the court is whether defendant abused its discretion, or in other words, acted arbitrarily and capriciously, in denying plaintiff's LTD claims.  An administrator's decision is an abuse of discretion only when it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 45 (3rd Cir. 1993) (citations omitted); Taft v.

1  <u>Equitable Life Ins. Co.</u>, 9 F.3d 1469, 1472 (9th Cir. 1994).  So

2  long as the administrator's decision has a rational basis, the

3  court is not free to substitute its own judgment for that of the

4  administrator in determining the eligibility for plan benefits

5  even if the court disagrees with that decision.  <u>Id.</u>  Under the

6  abuse of discretion standard, the only issue is whether, on the

7  evidence considered, the administrator's determination was

8  "reasonable."  <u>Horan v. Kaiser Steel Retirement Plan</u>, 947 F.2d

9  1412, 1417 (9th Cir. 1991); <u>see also</u> <u>Clark v. Wash. Teamsters</u>

10 <u>Welfare Trust</u>, 8 F.3d 1429, 1432 (9th Cir. 1993) ("Our inquiry is

11 not into whose interpretation of plan documents is most

12 persuasive, but whether the plan administrator's interpretation

13 is unreasonable.")

14      Moreover, the scope of review under the arbitrary and

15 capricious standard is very limited.  The focus of an abuse of

16 discretion inquiry is the administrator's analysis of the

17 administrative record--it is not an inquiry into the underlying

18 facts.  <u>Alford v. DCH Found Group Long-Term Disability Plan</u>, 311

19 F.3d 955, 957 (9th Cir. 2002).  Thus, the court will not consider

20 information outside the administrative record, as it would be

21 improper to find a claims administrator abused its discretion

22 based on evidence not before it at the time the decision was

23 made.  The Ninth Circuit explained the reasoning in <u>Taft</u>, 9 F.3d

24 at 1472:

25              Permitting a district court to examine
             evidence outside the administrative record
26           would open the door to the anomalous
             conclusion that a plan administrator abused
27           its discretion by failing to consider
             evidence not before it.  Moreover, such
28           expanded review would impede an important

16

1    purpose of the federal statute under which
2    district courts have jurisdiction to review
     these administrative decisions:

3    A primary goal of ERISA was to provide a
     method for workers and beneficiaries to
4    resolve disputes over benefits inexpensively
     and expeditiously.  Permitting or requiring
5    district courts to consider evidence from
     both partes that was not presented to the
6    plan administrator would seriously impair
     the achievement of that goal.

7
        Here, a review of the administrative record reveals that
8
   defendant did not abuse its discretion in denying plaintiff's LTD
9
   benefits claim.  The evidence shows that defendant made a
10
   reasonable conclusion based on the materials and records at its
11
   disposal.  The initial claim was denied by a nurse consultant who
12
   determined, based on the information presented, that plaintiff
13
   was not precluded from performing her occupation.  Plaintiff was
14
   employed as a financial aid analyst, which is a fully sedentary
15
   position.  The record that the nurse consultant reviewed
16
   contained Dr. Wong's notes stating that plaintiff suffered lower
17
   back pain and had a diagnosis of fibromyalgia.  The APS
18
   statements remarked, contradictory, that plaintiff could work no
19
   more than twenty-five hours per week and also that plaintiff
20
   could not work at all.  However, the second APS failed to address
21
   the *reason* for plaintiff's purported inability to work; instead,
22
   it provided the same analysis of plaintiff's health condition as
23
   the first APS, which stated that plaintiff *could* work twenty-five
24
   hours per week.  The notes did not indicate the extent of
25
   plaintiff's disabilities and thus the consultant reasonably
26
   concluded that there was insufficient evidence to support
27
   plaintiff's claim.  Defendant is permitted to refuse the analysis
28

17

of the claimant's treating physician.   "Plan administrators are
not obligated to accord special deference to the opinions of
treating physicians."   Black & Decker v. Nord, 538 U.S. 822, 825
(2003).

Additionally, defendant did not abuse its discretion in
denying plaintiff's appeal.   After defendant denied plaintiff's
initial claim, plaintiff submitted four additional pages of
medical records from Dr. Wong: a MRI report and three pages of
lab results.   Defendant then submitted plaintiff's medical
records for review by Dr. Lumpkins.   Dr. Lumpkins, a Board-
certified Rheumatologist, reported that plaintiff's MRI test was
negative and her lab tests were unremarkable.   In her conclusion,
Dr. Lumpkins stated that "there is insufficient data to support
an impairment of sufficient severity to prevent the claimant from
performing the duties of [her] sedentary job full time."   (ADMIN
0077.)   On the other hand, Dr. Wong's conclusory opinion, which
was unsupported by her own findings, stated plaintiff should not
work.   Defendant was warranted in crediting Dr. Lumpkins
conclusion over Dr. Wong's.   See Mitchell v. Aetna Life Ins. Co.,
359 F. Supp. 2d 880, 890 (C.D. Cal. 2005) (granting summary
judgment in favor of defendants on the grounds that the plan
administrator did not abuse its discretion in denying the
employee's LTD benefits claim based on the employee's "subjective
reports of pain and her doctors' unexplained conclusory opinions
that she was disabled from performing any job").

In sum, in reviewing the administrative record, the court
cannot conclude that defendant abused its discretion in denying
plaintiff's initial claim or appeal.   Defendant's conclusion,

1   based on the review by a nurse consultant and Dr. Lumpkins, was

2   supported by the evidence and was both reasonable and rational.

3        In a case involving similar facts, the District Court for

4   the Central District of California reached the same conclusion.

5   In Jordan v. Northrop Grumman Corp., 63 F. Supp. 2d 1145, 1148-49

6   (C.D. Cal. 1999), aff'd, 370 F.3d 869 (9th Cir. 2004), the

7   plaintiff, which had a sedentary job as a secretary, filed suit

8   against MetLife under ERISA seeking benefits under Northrop's

9   welfare benefits plan.  As in this case, MetLife both

10  administrated and funded the plan.  Id. at 1155.  The plaintiff

11  submitted limited materials to MetLife, which, in turn, requested

12  from the plaintiff and her doctors the required materials to

13  support her claim.  Id. at 1151.  Despite two requests by

14  MetLife, the plaintiff failed to submit the requested records.

15  Id.  Similar to this case, MetLife concluded that the plaintiff

16  failed to sustain a claim for benefits because the evidence

17  submitted to MetLife did not demonstrate the plaintiff's

18  inability to work.  Id.  On appeal, the plaintiff identified her

19  condition as fibromyalgia.  Id.  MetLife again requested medical

20  information which "supports a condition of total disability."

21  Id. at 1152.  An independent doctor, specialized in rheumatology,

22  examined the additionally supplied information and concluded that

23  the plaintiff's records did not support her inability to work.

24  Id.  MetLife, crediting its doctor's analysis, denied the

25  plaintiff's appeal.  Id. at 1153.

26       The district court, applying the abuse of discretion

27  standard of review, emphasized that the burden in substantiating

28  a claim for benefits rests on the plaintiff.  Id. at 1155.  Thus,

                                  19

as in this case, MetLife was not responsible for the fact that
there was insufficient evidence to establish the plaintiff's
inability to work.  MetLife made several attempts to acquire
medical records articulating the plaintiff's inability to perform
her occupation and the court concluded these attempts were
sufficient to demonstrate MetLife's effort in providing a fair
review of the plaintiff's claim.  Id. at 1152-53.

This court finds similarly here.  Defendant provided
plaintiff with ample opportunity to submit documents to prove she
was unable to work.  The information plaintiff supplied did not
demonstrate this inability.  Dr. Wong presented no reason for her
contrary opinion in the second APS, which stated plaintiff could
not work.  The MRI report and three pages of lab results
submitted on plaintiff's appeal did not support plaintiff's claim
for benefits:  the MRI report was negative and the lab results
were unremarkable.  An independent medical doctor, specialized in
rheumatology, opined that the evidence failed to demonstrate
plaintiff's inability to perform her occupation full-time.  The
court finds defendant's acceptance of this determination
reasonable.

Finally, the fact that MetLife both administrated and funded
the plan was not dispositive to the court's ruling in Jordan.
Although an apparent conflict of interest exists when an insurer
both funds and administers a plan, abuse of discretion review
still governs a court's analysis if the ERISA plan grants
discretion to the plan administrator.  Abatie v. Alta Health &
Life Ins. Co., 458 F.3d 955, 967 (9th Cir. 2006).  "The level of
skepticism with which a court views a conflicted administrator's

20

1  decision may be low if a structural conflict of interest is

2  unaccompanied, for example, by any evidence of malice, of self-

3  dealing, or of parsimonious claims-granting history."  Id. at

4  968.  Because no such malice is evident in defendant's denial of

5  plaintiff's claim here, the court's skepticism of defendant is de

6  minimus.  Thus, while the court considers the inherent conflict

7  of interest found in defendant because it both administrates and

8  funds the Plan, that conflict, coupled with no other significant

9  factor, does not provide the court grounds to find an abuse of

10  discretion when considering defendant's denial of plaintiff's LTD

11  benefits claim.

**CONCLUSION**

13      For the foregoing reasons, the court GRANTS defendant's

14  motion for summary judgment.  The Clerk of the Court is directed

15  to close this file.

16      IT IS SO ORDERED.

17  DATED: July 25, 2007.

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

21